**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

MIGUEL HARVEY,

                          Plaintiff,

        - v -                                   Civ. No. 9:15-CV-0853
                                                                 (MAD/DJS)

GENE PALMER, *et al.*,

                          Defendants.

**APPEARANCES:**                                   **OF COUNSEL:**

MIGUEL HARVEY
Plaintiff, *Pro Se*
96-A-1003
Wende Correctional Facility
P.O. Box 1187
Alden, New York 14004

HON. ERIC T. SCHNEIDERMAN               MICHAEL G. MCCARTIN, ESQ.
Attorney General of the State of New York       C. HARRIS DAGUE, ESQ.
*Attorney for Defendants Sears, Mullady,*           Assistant Attorney Generals
*Beane, Tamer, Menard, and Waldron*
The Capitol
Albany, New York 12224

DREYER, BOYAJIAN LAW FIRM                  BENJAMIN W. HILL, ESQ.
*Attorney for Defendant Palmer*
75 Columbia Street
Albany, New York 12210

**DANIEL J. STEWART**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

On July 8, 2015, *pro se* Plaintiff Miguel Harvey commenced this civil rights action pursuant to 42 U.S.C. § 1983, asserting claims arising from an incident that occurred on July 27, 2012, when he was incarcerated at Clinton Correctional Facility ("Clinton") in the custody of the Department

of Corrections and Community Supervision ("DOCCS"). Dkt. No. 1, Compl. Presently before the Court is Defendants' partial Motion for Summary Judgment, which seeks summary judgment on Plaintiff's Eighth Amendment medical indifference claim against Defendant Nurse Waldron.[1] Dkt. No. 59, Defs.' Mot. Summ. J. Plaintiff has not filed a response. For the reasons that follow, the Court recommends that Defendants' Motion be **granted**.

## I. BACKGROUND

### A. Plaintiff's Failure to Respond

Pursuant to this District's Local Rules, "[t]he Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert." N.D.N.Y.L.R. 7.1(a)(3). Although a *pro se* litigant is entitled to a liberal construction of his filings, *see Sykes v. Bank of America*, 723 F.3d 399, 403 (2d Cir. 2013), his *pro se* status does not relieve him of his obligation to comply with the relevant procedural rules, *see Edwards v. INS*, 59 F.3d 5, 8-9 (2d Cir. 1995). However, the Second Circuit, acknowledging a court's broad discretion to determine whether to overlook a failure to comply with local rules, has held that the court may in its discretion opt to conduct a review of the entire record even where one of the parties has failed to file a 7.1 statement of material fact. *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001); *see also Jackson v. Fed. Exp.*, 766 F.3d 189, 194 (2d Cir. 2014) (noting that "the court may rely on other evidence in the record even if uncited" in determining the undisputed material facts). Due to Plaintiff's *pro se* status, the Court has opted to review the entire summary judgment record to ascertain the undisputed material facts. The Court will cite to the facts

---

[1] The Motion does not seek summary judgment on Plaintiff's Eighth Amendment excessive force claims against Defendants Sears, Beane, and Tamer, nor on Plaintiff's Eighth Amendment failure-to-intervene claims against Defendants Mullady and Menard.

as set forth in Defendants' Rule 7.1 Statement of Facts only when properly supported by the record. Dkt. No. 59-2, Defs.' Rule 7.1. Statement of Material Facts ("Defs.' SMF"); *see also GlobalRock Networks, Inc. v. MCI Commc'ns Servs., Inc.*, 943 F. Supp. 2d 320, 329 (N.D.N.Y. 2013) ("Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather the court must be satisfied that the citations to evidence in the record support the movant's assertions.") (citing *Giannullo v. City of New York*, 322 F.3d 139, 143 n.5 (2d Cir. 2003)).

## B. Summary of Relevant Facts

Plaintiff's medical indifference claim against Defendant Waldron[2] is based upon treatment she provided to him on July 27, 2012,[3] following alleged assaults by the other Defendants.

According to Plaintiff, on July 27, 2012, he was at his work program when Defendant Correctional Officers Palmer and Sears approached him, grabbed him by his arms, and walked him out into a stairwell. Dkt. No. 59-4, Decl. of C. Harris Dague, Ex. 2, Dep. of Miguel Harvey, dated July 27, 2016 ("Pl.'s Dep.") at pp. 45-46. Plaintiff claims that Defendants Palmer and Sears began to assault him, and after the alarm pin was pulled, Defendant Correctional Officers Tamer and Beane arrived and joined Palmer and Sears in assaulting him. *Id.* at pp. 52-63. Plaintiff claims that Defendant Sergeant Mullady was present during the assault and eventually ordered the correctional officers to stop. *Id.* at pp. 63 & 66.

As Plaintiff's account of the events continues, he was then escorted by Tamer and Beane to

---

[2] Defendant Waldron is listed by her maiden name, Bentley, in Plaintiff's Complaint. Dkt. No. 59-7, Defs.' Mem. of Law at p.1 n.2.

[3] Plaintiff conceded that the only date he saw Defendant Nurse Waldron was on July 27, 2012. Dkt. No. 59-4, Decl. of C. Harris Dague, Ex. 2, Dep. of Miguel Harvey, dated July 27, 2016 ("Pl.'s Dep.") at p. 112.

Clinton's medical unit. *Id.* at pp. 68-69. When they arrived at the medical unit, Plaintiff was escorted into a room where Defendant Sergeant Menard and Defendant Nurse Waldron were waiting. *Id.* at p. 74. Plaintiff claims that Tamer and Beane then began punching him in his back and head as he attempted to shelter himself in the corner of the room. *Id.* at pp. 75-78. Plaintiff is unsure if Nurse Waldron was present during this assault. *Id.* at p. 79. Eventually, Sergeant Menard ordered Tamer and Beane to stop punching Plaintiff and directed them to strip Plaintiff down to his underwear. *Id.* at p. 78. Plaintiff removed his clothes. *Id.* at p. 81. Plaintiff was bleeding from his nose, and Beane gave him some tissues. *Id.* at p. 81. Plaintiff felt pain in his nose, and asked if it was broken, which Beane answered by saying no. *Id.* at pp. 81-82.

Nurse Waldron re-entered the room at approximately 10:30 a.m. *Id.* at p. 82; Defs.' SMF at ¶ 6. Plaintiff claims that he was suffering the following injuries due the assaults committed by the Defendants: (1) a broken nose; (2) black eyes; (3) headaches; and (4) knee pain. *See* Pl.'s Dep. at pp. 112-13. With respect to his knee pain, Plaintiff had a preexisting injury to his right knee, for which he had arthroscopic surgery in 2006. *Id.* at pp. 85-86. This injury had caused Plaintiff's knee to occasionally swell and lock up, and he had been in physical therapy for several years. *Id.* at pp. 114-15. Plaintiff states that he had pain in both knees following the assaults. *Id.* at p. 85. Plaintiff's broken nose was only discovered after he had been transferred from Clinton to Sing Sing, when, after an incident with another inmate in which his nose started bleeding, he received x-rays that showed that his nose had previously been broken. *Id.* at pp. 123-24. According to Plaintiff, Nurse Waldron did not examine him or give him any treatment for these injuries, but instead only asked him what his injuries were and completed some paperwork, which she had Plaintiff sign. *Id.* at pp. 82-83.

Medical records kept by Nurse Waldron indicate that she conducted a visual examination of Plaintiff and recorded his subjective complaints. Dkt. No. 59-5, Decl. of Rebecca Waldron, at ¶ 8; *see also* Dkt No. 59-6, Waldron Decl., Exs. In a Use of Force Report, Nurse Waldron specifically recorded the following:

> # 1  [Right] Cheek 1" scrape
> # 2  [Right] side forehead 1/2" scrape and bruise
> # 3  bloody nose
> # 4  complaint of bilateral knee pain
>
> Viewed in shorts, scratches cleaned and bacitracin applied, alert, oriented, ambulatory with limp. BP 144/90 P–105

Waldron Decl., Ex. 1.

She recorded the same examination findings in an Inmate Injury Report, where she additionally noted "no knee swelling." *Id.*, Ex. 3. The examination was recorded on video. *Id.*, Ex. 4.

## II. SUMMARY JUDGMENT STANDARD

Pursuant to FED. R. CIV. P. 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings,*

*Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)). "A verified complaint is to be treated as an affidavit for summary judgment purposes, and therefore will be considered in determining whether material issues of fact exist." *Colon v. Coughlin*, 58 F.3d at 872.

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

When a motion for summary judgment is unopposed, the court may "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show

that the movant is entitled to it." FED. R. CIV. P. 56(e)(3); *see also* N.D.N.Y.L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers . . . shall be deemed as consent to the granting or denial of the motion."). "If the evidence adduced in support of the summary judgment motion does not meet [the movant's] burden [of production], 'summary judgment must be denied *even if no opposing evidentiary matter is presented.*'" *Amaker v. Foley*, 247 F.3d 677, 681 (2d Cir. 2001) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970)). "An unopposed summary judgment motion may also fail where the undisputed facts fail to 'show that the moving party is entitled to judgment as a matter of law.'" *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (quoting *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996)). "In the case of a *pro se*, the district court should examine every claim or defense with a view to determining whether summary judgment is legally and factually appropriate." *Jackson v. Fed. Exp.*, 766 F.3d 189, 198 (2d Cir. 2014).

## III. DISCUSSION

The basis of Plaintiff's Eighth Amendment claim against Defendant Nurse Waldron is that she did not properly examine him and provided no treatment for his injuries; he claims that she only "gave him a piece of paper to sign." Compl. at ¶ 6(11). Plaintiff claims that he has had difficulty breathing since the incident due to "mucus buildup" in his nose, and that "his right knee constantly hurts, occasionally swell[s] and locks up, causing him unbearable pain and suffering [and] keeping him off his feet for an unaccounted period of time." *Id.* at ¶¶ 6(17-18).

### A. Legal Standard

To state an Eighth Amendment claim for denial of adequate medical care, a prisoner must

demonstrate that prison officials acted with "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "[T]he plaintiff must allege conduct that is 'repugnant to the conscience of mankind' or 'incompatible with the evolving standards of decency that mark the progress of a maturing society.'" *Ross v. Kelly*, 784 F. Supp. 35, 44 (W.D.N.Y.), *aff'd*, 970 F.2d 896 (2d Cir. 1992) (quoting *Estelle v. Gamble*, 429 U.S. at 102, 105-06). To state a claim for denial of medical care, a prisoner must demonstrate (1) a serious medical condition and (2) deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 834-35 (1994); *Hathaway v. Coughlin ("Hathaway I")*, 37 F.3d 63, 66 (2d Cir. 1994).

The first prong is an objective standard and considers whether the medical condition is "sufficiently serious." *Farmer v. Brennan*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). A court must consider two inquiries in determining whether a deprivation of care is sufficiently serious. *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006). First, the court must determine "whether the prisoner was actually deprived of adequate medical care." *Id.* Medical care is adequate where the care provided is a "reasonable" response to the inmate's medical condition. *Id.* The second inquiry is "whether the inadequacy in medical care is sufficiently serious." *Id.* at 280. In cases where there is a failure to provide any treatment, the court examines whether the inmate's medical condition is sufficiently serious. *Smith v. Carpenter*, 316 F.3d 178, 185-86 (2d Cir. 2003). The Second Circuit has stated that a medical need is serious if it presents "a condition of urgency that may result in degeneration or extreme pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks and citation omitted). Among the relevant factors to consider are "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects

an individual's daily activities; or the existence of chronic and substantial pain." *Id.* (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992)). In cases where medical treatment is given, but is inadequate, "the seriousness inquiry is narrower." *Salahuddin v. Goord*, 467 F.3d at 280. "For example, if the prisoner is receiving on-going treatment and the offending conduct is an unreasonable delay or interruption in that treatment, the seriousness inquiry 'focus[es] on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone.'" *Id.* (quoting *Smith v. Carpenter*, 316 F.3d at 185).

The second prong is a subjective standard requiring a plaintiff to demonstrate that the defendant acted with the requisite culpable mental state similar to that of criminal recklessness. *Wilson v. Seiter*, 501 U.S. at 301-03; *Hathaway I*, 37 F.3d at 66. A plaintiff must demonstrate that the defendant acted with reckless disregard to a known substantial risk of harm. *Farmer v. Brennan*, 511 U.S. at 836. This requires "something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id*. at 835; *see also Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996) (citing *Farmer v. Brennan*, 511 U.S. at 835). Further, a showing of medical malpractice is insufficient to support an Eighth Amendment claim unless "the malpractice involves culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces 'a conscious disregard of a substantial risk of serious harm.'" *Chance v. Armstrong*, 143 F.3d at 702 (quoting *Hathaway v. Coughlin ("Hathaway II")*, 99 F.3d 550, 553 (2d Cir. 1996)); *see also Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) (citations omitted).

### B. Analysis

In the first place, it is doubtful that Plaintiff is able to show that he was suffering from a

sufficiently serious condition to satisfy the objective prong of the Eighth Amendment. While Plaintiff asserts that he suffered constant knee pain following the alleged assaults, the record lacks any diagnosis of an injury that he suffered due to this incident. Notably, district courts in this Circuit have generally found complaints of knee pain "to be insufficient to trigger Eighth Amendment protection and to support a deliberate indifference claim." *Moody v. Pickles*, 2006 WL 2645124, at *6 (N.D.N.Y. Sept. 13, 2006) (collecting cases). District courts in this Circuit have also held that black eyes and headaches, such as what Plaintiff from suffered following the alleged assault, do not constitute a sufficiently serious condition. *See,e.g., Dallio v. Herbert*, 678 F. Supp. 2d 35, 60-61 (N.D.N.Y. 2009) (collecting cases). Some district courts have, however, recognized that a broken nose may constitute a sufficiently serious condition. *See Lasher v. City of Schenectady*, 2004 WL 1732006, at *5 (N.D.N.Y. Aug. 3, 2004). Plaintiff claims that the pain in his nose was severe enough that three or four days after the incident it woke him up in the middle of the night. Pl.'s Dep. at p. 108. Nonetheless, it is unclear if Plaintiff's nose was actually broken during the events alleged in this action since, as Plaintiff admits, the x-rays he later received at Sing Sing only showed that he had broken his nose at some point in the past. *Id.* at p. 124.

Even if the Court were to assume that Plaintiff had established a sufficiently serious condition, however, it would find that the record fails to support Plaintiff's claim that Defendant Nurse Waldron acted with deliberate indifference. Specifically, the records completed by Nurse Waldron, in addition to the video of the examination,[4] demonstrate that Nurse Waldron conducted an appropriate examination of Plaintiff. She recorded his complaints and cleaned his scrapes and cuts with bacitracin. Waldron Decl., Exs. As to Plaintiff's knees, she noted that there was no

---

[4] A videotape may be properly considered in connection a summary judgment motion. *See Scott v. Harris*, 550 U.S. 372, 379-80 (2007).

swelling. *Id.*, Ex. 3. Nothing in the record suggests that Plaintiff's injuries were so urgent that Nurse Waldron consciously disregarded a "substantial risk of serious harm" to him by not providing more extensive treatment. *Chance v. Armstrong*, 143 F.3d at 702. At most, Nurse Waldron's failure to conduct a more a thorough examination would constitute negligence, which is insufficient to support an Eighth Amendment claim.

Accordingly, the Court recommends that summary judgment be **GRANTED** as to Plaintiff's Eighth Amendment medical indifference claim against Defendant Nurse Waldron.

## IV. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motion for Summary Judgment (Dkt. No. 59) be **GRANTED** and Plaintiff's Eighth Amendment claim against Defendant Nurse Waldron be **DISMISSED**; and it is further

**RECOMMENDED**, that if the above recommendation is accepted, that Defendant Nurse Waldron be **DISMISSED** from this action, and that this action be deemed trial ready on Plaintiff's claims against the remaining Defendants; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14)[5] days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court.

---

[5] If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).

**FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date:   August 1, 2017
        Albany, New York

_____
Daniel J. Stewart
U.S. Magistrate Judge